**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Susan Venezia,<br><br>   Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>   Defendant. | No. CV-16-08020-PCT-NVW<br><br>**ORDER** |

Plaintiff Susan Venezia seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.     BACKGROUND**

Plaintiff was born in October 1950. She completed the equivalent of a high school education. From 1985 to 2000, Plaintiff worked as a pharmacy assistant. From October 2003 to July 2011, Plaintiff worked for Lowe's, designing and selling kitchen and bathroom countertops and sinks. On March 25, 2010, she was hospitalized for a hemorrhagic stroke, secondary to hypertension. She was discharged on March 27, 2010, in stable condition. A physical therapy evaluation found no need for further physical

therapy or rehabilitation. At some point after her stroke, Plaintiff returned to work for approximately a year.

On July 25, 2011, Lowe's terminated Plaintiff's employment.[1] For the next year, she received unemployment compensation and sought work as a retail clerk. In 2014, Plaintiff testified that the most serious health problems affecting her ability to work are fibromyalgia, headaches, and osteoporosis.[2] She is able to drive, shop, manage money, prepare simple meals, wash dishes, manage personal care, feed pets, watch television, and use a computer and electronic tablet.

On December 28, 2011, Plaintiff applied for disability insurance benefits, alleging disability beginning July 25, 2011. On February 19, 2014, she appeared with her attorney and testified at a video hearing before the ALJ. A vocational expert also testified. On April 22, 2014, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On February 4, 2016, Plaintiff sought review by this Court.

## II.   STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, when the evidence is susceptible to more than one rational interpretation, courts must uphold the

---

[1] Plaintiff said she was terminated because she did not remember how to design kitchens correctly, but on another occasion she said she was terminated for arriving late to work.

[2] Although Plaintiff referred to osteoporosis, her attorney questioned her about symptoms she experienced due to osteoarthritis.

- 2 -

ALJ's findings if they are supported by inferences reasonably drawn from the record. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "Overall, the standard of review is highly deferential." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015).

**III.    FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a severe medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2016, and that she has not engaged in substantial gainful activity since July 25, 2011, the alleged onset date. The ALJ also found that Plaintiff received unemployment compensation in the fourth quarter of 2011

and in all four quarters of 2012. The ALJ found this to be inconsistent with a claim for disability because a claimant must certify that she is physically and mentally able, willing, and available to work to be eligible for unemployment compensation.

At step two, the ALJ found that Plaintiff has the following medically determinable impairments: controlled hypertension, history of stroke March 25, 2010, migraines, asthma, obesity, borderline intellectual functioning, anxiety, and depression. The ALJ found that Plaintiff does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) her ability to perform basic work-related activities for 12 consecutive months. Therefore, at step two, the ALJ concluded that Plaintiff does not have a severe impairment or combination of impairments, and she is not disabled. By reaching this conclusion at step two, the ALJ was not required to assess Plaintiff's residual functional capacity, determine whether she is still capable of performing past relevant work, or determine whether Plaintiff has skills that are transferable to other work.

**IV.   ANALYSIS**

At step two, the ALJ was required to determine whether Plaintiff has a severe medically determinable physical or mental impairment. An impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). "Basic work activities" means the abilities and aptitudes to do most jobs, such as walking, standing, sitting, seeing, hearing, etc. 20 C.F.R. § 404.1521(b). At step two, Plaintiff had the burden of proving she has impairments that significantly limit her ability to do basic work activities.

Plaintiff contends that the evidence of record shows that her stroke, migraines, asthma, obesity, borderline intellectual functioning, anxiety, and depression significantly limit her ability to perform basic work activities. She further contends that the ALJ abused his discretion in concluding Plaintiff does not have a severe impairment or

combination of impairments because he erred in weighing medical source opinion evidence, assessing Plaintiff's credibility, and weighing third-party reports.

### A. The ALJ Did Not Err in Weighing Medical Source Opinion Evidence.

#### 1. Legal Standard

Generally, more weight should be given to the opinion of a treating physician than to the opinions of physicians who do not treat the claimant, and the weight afforded a non-examining physician's opinion depends on the extent to which he provides supporting explanations for his opinions. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

In deciding weight to give any medical opinion, the ALJ considers not only whether the source has a treating or examining relationship with the claimant, but also whether the treatment or examination is related to the alleged disability, the length of the relationship, frequency of examination, supporting evidence provided by the source, and medical specialization of the source. 20 C.F.R. § 404.1527(c). Generally, more weight is given to the opinion of a specialist about medical issues related to his area of specialty than to the opinion of a source who is not a specialist. 20 C.F.R. § 404.1527(c)(5). The ALJ may discount a physician's opinion that is based only the claimant's subjective complaints without objective evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The opinion of any physician, including that of a treating physician, need not be accepted "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

#### 2. Treating Psychiatrist Katherine Cheeves, M.D.

Plaintiff contends she has severe mental impairment due to her stroke on March 25, 2010, and by her anxiety and depression. Dr. Cheeves' responses on the October 5,

2012 Mental Impairment Questionnaire, which covered the period from 2011 to October 5, 2012, are inconsistent with her treatment notes. On March 31, 2011, Dr. Cheeves noted that Plaintiff reported she was doing well, was tolerating full-time employment, and maintaining good concentration and stress tolerance. Dr. Cheeves observed Plaintiff had organized thoughts and good concentration and attention. On June 9, 2011, Dr. Cheeves observed that Plaintiff was alert, had good concentration, and had good work functioning. Plaintiff reported feeling well. On September 16, 2011, Dr. Cheeves noted that Plaintiff was coping with job loss, her anxiety/depression symptoms had increased, and she was unable to afford medication without insurance coverage. Dr. Cheeves also noted that Plaintiff had decreased concentration, had lost ability to concentrate on reading for a period, and now was reading again. On November 4, 2011, Dr. Cheeves noted that Plaintiff was generally feeling well and her prescribed medication was effective with no side effects. On February 3, 2012, Dr. Cheeves reported Plaintiff had not been feeling as well in the last month after a prolonged upper respiratory infection, her mood had been variable depending on continued stressors, and her affect was "a bit restricted." At each of these office visits, Plaintiff demonstrated adequate insight and judgment. At each office visit except for February 3, 2012, Dr. Cheeves reported Plaintiff's affect as euthymic, *i.e.*, normal, non-depressed, reasonably positive.

The ALJ did not err by considering and giving little weight to Dr. Cheeves' October 5, 2012 Mental Impairment Questionnaire. On the Questionnaire, Dr. Cheeves described Plaintiff's symptoms as poor energy, limited concentration because of anxiety, rapid mood changes, and poor stress tolerance. Dr. Cheeves opined that Plaintiff's psychiatric symptoms exacerbated her chronic pain symptoms, and her impairments would cause Plaintiff to be absent from work more than three times per month. The form listed 25 work-related mental abilities and aptitudes and requested an explanation with medical/clinical findings for each ability or aptitude rated fair or poor. Dr. Cheeves rated Plaintiff as fair or poor on 24 of the 25 items and gave only the following general explanation: "associated/secondary to clinical depression/stroke." Dr. Cheeves opined

- 6 -

that Plaintiff had marked restriction of activities of daily living, marked difficulties in maintaining social functioning, frequent deficiencies of concentration, and three or more episodes of deterioration or decompensation in work or work-like settings. However, Dr. Cheeves opined that Plaintiff does not have a low I.Q. or reduced intellectual functioning.

The ALJ provided clear and convincing reasons for giving little weight to Dr. Cheeves' opinion. He found that Dr. Cheeves' opinion is inconsistent with her treatment notes and the entire record of evidence. Dr. Cheeves' opinion stated Plaintiff had three or more episodes of deterioration or decompensation, yet Dr. Cheeves had not documented any psychiatric hospitalization. The ALJ also found that Dr. Cheeves' treatment notes are consistent with his findings. Dr. Cheeves' treatment notes showed that Plaintiff received routine and conservative mental health treatment and reported feeling better with her prescription medications. Further, the record showed no evidence that Plaintiff was restricted in activities of daily living, social functioning, or concentration, or had experienced periods of decompensation of extended duration.

### 3. Psychological Consultative Examiner Shannon Tromp, Ph.D.

The ALJ gave some weight to Dr. Tromp's opinion. He did not give her opinion full weight because it relies on Plaintiff's subjective allegations rather than Dr. Tromp's examination findings and is inconsistent with the objective record. Dr. Tromp assessed Plaintiff's affect as cheerful and animated, her memory fair, her attention and concentration good, comprehension fair, her estimated intellect low average, and her judgment and insight good. Dr. Tromp said that Plaintiff reported depression and anxiety but did not manifest those symptoms during the examination. Dr. Tromp opined that Plaintiff's childlike grammar during the interview likely was a decline from her speech before the stroke because she must have had better language skills to work as a kitchen designer at Lowe's. Dr. Tromp observed mild deficits with "speech, memory and perhaps with adhering to a schedule." She observed no problems with sustained concentration and persistence, social interaction, or adapting to change. Dr. Tromp did not find Plaintiff has severe impairments.

Therefore, the ALJ did not err in weighing medical source opinion evidence.

### B. The ALJ Provided Clear and Convincing Reasons for Discrediting Plaintiff's Symptom Testimony.

If a claimant's statements about pain or other symptoms are not substantiated by objective medical evidence, the ALJ must consider all of the evidence in the case record, including any statement by the claimant and other persons, concerning the claimant's symptoms. SSR96-7p. The ALJ must consider all of the evidence presented, including the claimant's daily activities; the location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; effectiveness and side effects of any medication taken to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the claimant uses to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Id.* Then the ALJ must make a finding on the credibility of the claimant's statements about symptoms and their functional effects. *Id.*

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). In making a credibility determination, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the claimant's allegations." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (internal quotation marks and citation omitted). But "an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." *Id.*

The ALJ summarized Plaintiff's testimony and reports as claiming that her impairments cause difficulty with exertional and nonexertional, postural, mental, and daily activities; difficulty with experiencing numbness, thinking and speaking, hearing, sleeping, panic attacks, concentrating, isolating at home, and working; dyslexia; panic attacks four or five times a week; crying spells four times a month; and day-long headaches three or four times a week causing blurred vision. The ALJ found Plaintiff's allegations are not fully credible because they are inconsistent with her ability to participate in numerous activities. The ALJ noted that Plaintiff acknowledged she is capable of washing dishes, taking a shower, reading, doing brain games, using a computer, watching television, feeding pets, performing personal care, preparing simple meals, light dusting, washing dishes, driving a car, shopping in stores, talking on the telephone, walking short distances, and following written instructions. The ALJ also noted that Plaintiff's allegations of impairment are inconsistent with the medical evidence of record.

Therefore, the ALJ did not err in finding Plaintiff's subjective symptom testimony less than fully credible.

**C.     The ALJ Did Not Err in Weighing Third-Party Reports.**

Plaintiff contends that the ALJ committed legal error by discounting third-party reports. When an ALJ discounts the testimony of lay witnesses, he must give reasons that are germane to each witness. *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 693-94 (9th Cir. 2009).

The ALJ considered third-party function reports submitted by Plaintiff's daughter and granddaughter and found them credible only to the extent they were consistent with the ALJ's findings based on other evidence. On April 4, 2012, Plaintiff's daughter reported that Plaintiff's daily activities were: "picks up house, feed cat, watch TV, takes walk (short), reads." Plaintiff's daughter also reported that Plaintiff was able to prepare sandwiches, soups, and frozen dinners, do house chores, drive, shop for groceries, go out alone, pay bills, count change, and use a checkbook. Plaintiff's daughter reported that

Plaintiff can understand instructions but gets confused, has trouble concentrating, and has panic attacks. She also reported that Plaintiff reads, watches television, and plays "brain games" on an electronic tablet every day, and her reading was improving.

On January 15, 2013, Plaintiff's granddaughter reported that Plaintiff's daily activities were: "reads, watches television, talks on the phone, plays games for the brain on the computer." Plaintiff's granddaughter also reported that Plaintiff was able to prepare microwavable food items, crock pot dinners, soups, and simple sandwiches. Plaintiff's granddaughter said Plaintiff cannot cook and bake because she cannot stand for long periods. Plaintiff's granddaughter reported Plaintiff can pay bills, count change, use a checkbook, drive, and understand written instructions, but does not remember spoken instructions. Plaintiff's granddaughter also reported that Plaintiff fears leaving her home and does not handle stress well.

The ALJ gave reasons germane to the reports of Plaintiff's daughter and granddaughter for discounting those reports. The ALJ found that Plaintiff's daughter and granddaughter made allegations similar to those made by Plaintiff, which he found not fully credible. The ALJ generally observed that lay opinions are less persuasive than the opinions of medical professionals and the opinions of family members are not unbiased. The ALJ specifically found that the opinions of Plaintiff's daughter and granddaughter are not supported by the clinical or diagnostic medical evidence in the record.

In addition, Plaintiff contends the ALJ erred by giving unstated weight to statements by Defendant's field office worker and Plaintiff's former employer. Defendant's field officer worker interviewed Plaintiff by telephone and observed that she had no difficulty with hearing, reading, breathing, understanding, coherency, concentrating, and talking, but some difficulty answering. He stated that it took her a few minutes to remember some dates, but "other than that seems ok." Defendant's field office worker's observations do not support finding Plaintiff is disabled.

Plaintiff's employment records include documentation of "mid-year conversation comments" dated August 5, 2010, which appears to be the equivalent of a performance review. Under various categories, Plaintiff's supervisor wrote the following comments:

> Sue is excellent with her customers but she is frequently giving incorrect information on product and services to the customers. I expect better productivity and efficiency in 2011.

> Sue is engaged with the customers and she is very friendly and personable with all of them.

> Sue is good at getting vendors in to fix and put up new displays. I would like to see more department display maintenance from Sue in 2011, i.e., cleaning, replacing bulbs, etc.

> Sue is great with the customers that come to her. She needs to actively seek her customers. I think Sue would capitalize on a lot of sales if she was more proactive with the selling process. I feel that Sue does what is needed day to day and does not go above and beyond to ensure maximized sales.

> Again, Sue is very engaged with the customers that come to her. I believe that she does build a good relationship with her customers. She does need to improve on her resolution of issues in 2011.

> Sue is extremely knowledgeable with all of the product in cabinets and countertops. She is familiar with all of the services as well but I would like to see improvement on credit, SOS, and installs in 2011.

> Sue is great with her customers but she is continuously having communication issues with either the installer, customers, or vendors which cause issues and unhappy customers. She needs to take more time and pay more attention to detail in the selling process so we don't have mistakes and issues to resolve.

Plaintiff's supervisor's comments do not support finding Plaintiff is disabled.

In summary, the ALJ did not err in weighing third-party reports by Plaintiff's daughter and granddaughter. To the extent the ALJ should have stated the weight he gave to the statements by Defendant's field office worker and Plaintiff's former employer, any such error is harmless because they do not support finding Plaintiff is disabled.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 12th day of December, 2016.

Neil V. Wake
Senior United States District Judge